Common Pleas Court for Summit County.

WALTER K. WITNER v. MANUEL GOODMAN, ET AL.

Decided July 1, 1931.

*Paul C. Weick* and *Ford L. Carpenter,* for defendant Esselburn & Ellis, Inc.

*Ben W. Holub* and *H. H. Elder,* for defendant The Great Lakes Sash & Door Co.

*S. Peyton Baker,* for plaintiff.

*Merryl F. Sicherman, amicus curiae.*

*Alfred Limber, Smoyer & Smoyer, Herberich, Weick & Powers, Motz & Morris, Carl M. Myers, Harris & Holub, O. G. McKibben, J. Edward Schenz, Donald Gottwald, Wilson & Kelly, Doolittle, Foust & Holden, Waltz & Enright, Meade & Weygandt, Harry Ream, Stanley S. Nichols, Griswold, Green, Palmer & Hadden, Ernest J. Kempel, James V. Sawyer, W. H. Crawford, Gerald A. Doyle, Underwood, Carson, Moore & Howes, Holloway & Chamberlin, McCuskey, Cotton & Short, Commins, Brouse, Englebeck & McDowell,* and *Ernest L. Cunningham,* for the many defendants.

Doyle, J.

The case of the *Great Lakes Sash & Door Company* v. *Esselburn & Ellis, Inc.*, No. 79,173, was consolidated with this action and was heard with it. A great many matters, involving chiefly questions of marshaling of liens, are concerned therewith, but the most important one and the question before this court at this time is the one arising between the Greak Lakes Sash and Door Company and Esselburn and Ellis, Inc., wherein the Great Lakes Sash & Door Company asks this court of equity for an order compelling Esselburn and Ellis to pay to it the sum of $882.00, the same being the amount stated in an order on Esselburn and Ellis given by Goodman to this plaintiff, the Great Lakes Sash & Door Company.

It appears that on or about May 15, 1929, one Manuel Goodman executed and delivered to Esselburn & Ellis, Inc., five notes and mortgages, each in the amount of thirty-three hundred dollars, aggregating sixteen thousand five hundred dollars. These mortgages did not contain on their face the covenants authorized by General Code Section 8321-1, but come within the purview of the case of *Rider* v. *Crobaugh*, 100 O. S., 88. Houses were constructed on each of the five lots covered by the mortgages, and pursuant to orders on Esselburn and Ellis, Inc., signed by the said Manuel Goodman, there was paid by the mortgagee, Esselburn and Ellis, to various materialmen, laborers and subcontractors, all but approximately three thousand dollars of the aforesaid aggregate amount of sixteen thousand five hundred dollars.

The order which is the basis of the claim of the Great Lakes Sash & Door Company is in the same form as the orders mentioned above and reads as follows:

"Akron, Ohio, June 24th, 1929.
ESSELBURN & ELLIS, INC.,
Mill and High Sts.,
Fifth Floor.
Subject to conditions printed on reverse side.
Pay to The Great Lakes Sash & Door Co., $882.00, Eight hundred and eighty-two and - - - xxDollars, and charge Mortgage Loan No._____
In full for interior finish and doors 856-848-840-832-828.
Borrower Manuel Goodman
Location, Blaine Ave."

The reverse side of this order bears the usual waiver of lien so far as Esselburn & Ellis, Inc., are concerned, and is signed "The Great Lakes Sash and Door Co., by E. A. Elder, Pres."

The Great Lakes Sash & Door Company obtained the foregoing order for interior finish and doors installed in the five houses, which was promptly presented to Esselburn & Ellis. There was no written acceptance thereof, and this court finds from the evidence that the acts of Esselburn & Ellis did not constitute an acceptance. See *Federation Savings & Loan Company* v. *Schmitt et al.,* 27 O. App., 379, in which it is held that the loan company's retention of such an order after presentation to it, until sufficient work was done on the dwelling house to warrant its payment, was not such an acceptance of the order as to make it liable thereon (7th syllabus).

It is now claimed by the Great Lakes Sash & Door Company that this order constituted such an assignment or partial assignment of the balance of approximately three thousand dollars, left in the so-called fund, as would entitle it in equity, if not at law, to compel Esselburn & Ellis to pay it the sum of eight hundred and eighty-two dollars.

With this the court cannot agree.

Baldwin's Revision of Bouvier's Law Dictionary defines an assignment as "a transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein."

The mortgages from Manuel Goodman to Esselburn & Ellis, Inc., created no debt from Esselburn & Ellis to Manuel Goodman, and consequently there is no property, estate or right therein of Manuel Goodman's in the hands of Esselburn & Ellis, which a creditor or assignee of Manuel Godman may reach in this action.

In 3 Williston on Contracts, Section 1411, it is stated:

"Breach of a contract to lend money for whatever period at the current rate of interest, or at whatever rate of interest, for no definite time, involves no legal damage unless consequental damages are recoverable."

The same author in Section 1421, at page 2531, says: "Equity will not specifically enforce contracts to lend money." See also cases cited.

A close analogy is found in the case of a bank check. General Code Section 8294 provides:

"A check does not of itself operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check."

General Code Section 8290 provides that the provisions of the Negotiable Instrument Law relating to checks shall apply also to drafts payable on demand. The substance of Section 8294 was law in this state before the enactment of the Negotiable Instruments Law. See *Covert* v. *Rhodes,* 48 O. S., 66, first syllabus.

The reason for the rule is that there must be a specific fund upon which the assignment may operate, and a bank is merely a debtor to its depositors. The fact that a bank check is not an assignment of any funds or deposit with the bank is demonstrated by the possibility of an overdraft. Where a bank honors checks in instances where there are not sufficient funds on deposit to the drawer's account with which to pay the same, the debtor-creditor relationship between bank and depositor becomes more apparent, as does the lack of a specific fund.

In the case at bar it was not shown that there was any specific fund set apart by Esselburn & Ellis for Manuel Goodman by reason of these mortgages. It cannot be said from the evidence that Esselburn & Ellis were holding funds of Manuel Goodman's as his agent, or as his debtor. In fact there was no fund at all to assign in whole or in part. The most that can be said is that a contract was entered into between Manuel Goodman and Esselburn & Ellis whereby Esselburn & Ellis agreed to lend Goodman a certain sum of money, and that Esselburn & Ellis have broken this contract. The situation is that Manuel Goodman is the debtor of Esselburn & Ellis for the amount of money actually disbursed and not Esselburn & Ellis the debtor of Manuel Goodman. The essence

of any mortgage contract is security for the mortgagee, and pursuant to the security element of this contract Esselburn & Ellis have, for some reason, refused to honor the order delivered to the Great Lakes Sash & Door Company.

In *Mutual Savings & Loan Company* v. *Wayne-Ohio Company*, 11 unreported cases, 9th District Court of Appeals (Ohio), 757, the court says at page 765, "The principle is well established that when an order is given, payable out of a particular fund, it is necessary to allege not only the amount due and owing and the refusal to pay, but also that there is money in the hands of the drawee in such fund out of which the payee is entitled to be paid."

Not only do the pleadings in the case at bar fall short of that principle, but the evidence fails to bring the instant case within the purview of the last cited case. But the evidence did show that Esselburn & Ellis claimed interest upon the entire sum from the time of the credit upon its books to Goodman. Under the view of this case herein set forth, this cannot be permitted, and the mortgagee will be allowed interest only upon such sums as it actually advanced.

While this court agrees with the result reached in *Federation Savings & Loan Company* vs. *Schmitt et al., supra*, it has reached a similar result in the instant case upon different reasoning. The Cuyahoga County Court of Appeals in the *Schmitt* case held (see first syllabus) that the order was not such an assignment of the funds that suit against the loan company could be predicated thereon. This court is of the opinion there is no fund.

Counsel will furnish journal entry disposing of the matters discussed in this opinion in accordance with the opinion, and also disposing of the other matters in the case upon which there is no dispute. Exceptions given.